## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: | § | CASE NO: 20-11419 |
| | § | |
| GENESIS VENTURE LOGISTICS, | § | CHAPTER 7 |
| L.L.C., | § | |
| | § | SECTION "A" |
| DEBTOR. | § | |

| | | |
|---|---|---|
| GENESIS VENTURE LOGISTICS, | § | |
| L.L.C., | § | |
| | § | |
| PLAINTIFF, | § | ADV. NO. 20-1058 |
| v. | § | |
| | § | |
| KZM MARINE SERVICES, LLC, | § | |
| & | § | |
| TOMMY B. HENRY, | § | |
| | § | |
| DEFENDANTS. | § | |

| | | |
|---|---|---|
| IN RE: | § | CASE NO: 20-11525 |
| | § | |
| LORRAINE MAE HYDE, | § | CHAPTER 11 |
| | § | |
| DEBTOR. | § | SECTION "A" |
| | § | |

| | | |
|---|---|---|
| LORRAINE MAE HYDE, | § | |
| | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | ADV. NO. 20-1059 |
| v. | § | |
| | § | |
| KZM MARINE SERVICES, LLC, | § | |
| & | § | |
| TOMMY B. HENRY, | § | |
| DEFENDANTS. | § | |

## MEMORANDUM OPINION AND ORDER DENYING MOTIONS TO STRIKE

The Court held a hearing on December 9, 2020, to resolve the identical motions entitled *KZM and Tommy B. Henry's Anti-SLAPP Motion Against GVL and Lorraine Hyde*, as amended, (the "Motions To Strike"), filed in the above-captioned adversary proceedings by Defendants Tommy B. Henry and KZM Marine Services, LLC.  [Adv. No. 20-1058, ECF Docs 16 & 21; Adv. No. 20-1059, ECF Docs. 12 & 15].  The Debtors, Genesis Venture Logistics, L.L.C. and its principal, Lorraine Hyde, filed oppositions to each motion.  [Adv. No. 20-1058, ECF Doc. 32; Adv. No. 20-1059, ECF Doc. 18].  The Motions To Strike seek to dismiss defamation claims asserted against the Defendants by the Debtors pursuant to Louisiana Code of Civil Procedure article 971, also known as Louisiana's "anti-SLAPP" (Strategic Litigation Against Public Participation) statute.

Appearances were as noted on the record.  After hearing the arguments of counsel, the Court took the matters under submission.  After considering the filings, the record, and the applicable legal authority, and for the reasons provided herein, the Court hereby DENIES the Motions To Strike.

## JURISDICTION AND VENUE

This Court has jurisdiction to grant the relief provided for herein pursuant to 28 U.S.C. § 1334.  The matter presently before the Court constitutes a core proceeding that this Court may hear and determine on a final basis under 28 U.S.C. § 157(b).

## BACKGROUND

Genesis Venture Logistic, LLC ("GVL") and Lorraine Mae Hyde ("Hyde"), GVL's owner and operator (together, the "Debtors"), each filed a petition for bankruptcy relief under chapter 11 of the bankruptcy code on August 7, 2020, and August 31, 2020, respectively.  [No. 20-11419,

ECF Doc. 1; No. 20-11525, ECF Doc. 1].  On June 21, 2021, GVL's case was converted to one under chapter 7.  [No. 20-11419, ECF Doc. 287].

On October 7, 2020, the Debtors each initiated an adversary proceeding within their main cases against Tommy B. Henry ("Henry") and KZM Marine Services, LLC ("KZM"), bringing claims for defamation, breach of contract, violations of the Louisiana Unfair Trade Practices Act, tortious interference with business relations, conversion, and fraud, among others.   In the complaints filed in these two adversaries (together, the "Complaints"), the Debtors allege the following:

GVL is a transportation logistics company focused in the maritime industry.  GVL Compl., ¶¶ 7–8, 12–13 [No. 20-1058, ECF Doc. 1][1].  GVL contracted with KZM through its principal, Henry, for KZM to operate vessels chartered by GVL as GVL's subcontractor.  Id. ¶¶ 15–17.  Debtors allege that, during the course of this business arrangement, the Defendants "engaged in a series of outrageous actions calculated not only to overcharge GVL, but to destroy GVL's customer and supplier relationships."  Id. ¶ 19.  As relevant here, the Debtors assert that the Defendants submitted fraudulent and intentionally overinflated invoices to GVL, then demanded payment of those fraudulently calculated amounts while refusing to cooperate with GVL's contractual rights to attempts to audit associated records for the disputed line-items.  Id. ¶¶ 19, 29, 32–34, 84–86 & 89–90.  Debtors allege that the Defendants then falsely represented to GVL's other customers and business contacts that GVL had defaulted on its payments to KZM as its subcontractor, and impermissibly sought and obtained payment those customers directly.  Id. ¶¶ 21–23, 26–30 & 96–98.  Additionally, Debtors allege that KZM contacted GVL's factoring

---

[1]     For ease of reference, unless there is a material difference between the equivalent filings in each case, the Court will cite to the pleadings filed in Adversary Proceeding No. 20-1058, GVL v. KZM & Henry, for facts or arguments applicable to both cases.

company, AmeriFactors Financial Group, LLC ("AmeriFactors"), and informed it that GVL was in default to KZM; Debtors further allege that as a result of those communications, AmeriFactors froze funding to GVL when that funding was necessary to continue operations. *Id.* ¶¶ 22, 25 & 95. The Debtors further claim that Henry spread lies through both social media and direct contact with GVL's business contacts, asserting that Hyde was a "thief" subject to criminal investigation, and that she and GVL do not pay their contractors or honor their debts. *Id.* ¶¶ 97, 144 & 146. The Debtors allege that, as a result, GVL lost contracts and suffered damaged to their reputation in the industry, *see id.* ¶¶ 90, 102, 105 & 110, and that Hyde personally suffered significant harm to her reputation, causing both financial and emotional damages, *see* Hyde Compl., ¶¶ 45, 51, 63 & 70– 71.

In lieu of filing Answers to the Complaints, the Defendants filed the instant Motions To Strike under Louisiana Code of Civil Procedure article 971 as to the defamation claims brought against them in both proceedings. Defendants concede that they made unflattering statements about GVL and Hyde both publicly and privately, but assert that any such statements were opinion or hyperbole, not actionable defamation. To the extent any such statements were representations of facts, they contend that they were based on truth about the Debtors' business practices and failure to pay their debts. The Debtors filed timely objections, arguing that (i) article 971 does not apply in federal court, (ii) the Defendants have not made the necessary showing that their speech was in furtherance of their constitutional free speech rights, and (iii) the Debtors have satisfied their burden of demonstrating that their defamation claims are meritorious.

## DISCUSSION

Louisiana Code of Civil Procedure article 971, also known as Louisiana's "anti-SLAPP" (Strategic Litigation Against Public Participation) statute, provides:

4

(1) A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established a probability of success on the claim.

(2) In making its determination, the court shall consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based.

LA. CODE CIV. PROC. ANN. art. 971.  When seeking dismissal of a defamation claim under article 971, "[t]he defendant-movant must first make a prima facie showing that Article 971 covers the speech or activity at issue—i.e. that the act sued upon was taken 'in furtherance of the . . . right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue.'" *Lozovyy v. Kurtz*, 813 F.3d 576, 582 (5th Cir. 2015) (quoting *Starr v. Boudreaux*, 978 So. 2d 384, 388–89 (La. Ct. App. 2007)).  "Once a prima facie showing is made, the burden shifts to the plaintiff to demonstrate a 'probability of success' on his claim." *Id.* (quoting *Starr*, 978 So. 2d at 389).

## A.    Article 971's Application in Federal Court

The Debtors argue as a threshold matter that article 971 is inapplicable in this federal court under *Erie R. Co. v. Tompkins,* 304 U.S. 64 (1938).  "Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Block v. Tanenhaus*, 867 F.3d 585, 589 (5th Cir. 2017) [Block II] (quoting *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996)).  But "[i]f there is a 'direct collision' between a state substantive law and a federal procedural rule that is within Congress's rulemaking authority, federal courts apply the federal rule and do not apply the substantive state law." *Id.* (quoting *All Plaintiffs v. All Defendants*, 645 F.3d 329, 333 (5th Cir. 2011)).  "More particularly, the relevant question usually can be characterized as whether the Federal Rule and the state rule can both be applied without one

5

undermining the other."  19 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 4510 (3d ed. 2021).

In its most recent cases addressing this matter, the Fifth Circuit has explicitly stated that "the applicability of state anti-SLAPP statutes in federal court is an important and unresolved issue in this circuit."  *Block II*, 867 F.3d at 589 & n.2.[2]  Although it has to date declined to resolve this *Erie* question, the Fifth Circuit has interpreted Louisiana law to conclude that article 971's requirement that a non-movant demonstrate "probability of success" imposes a burden "functionally equivalent to that under Rule 56 [of the Federal Rules of Civil Procedure]."  *Block v. Tanenhaus*, 815 F.3d 218, 221 (5th Cir. 2016) [Block I] (citing *Lozovyy*, 813 F.3d at 585).  In other words, "to avoid dismissal on an Article 971 motion to strike, [the Plaintiff] need only establish a genuine dispute of material fact."  *Id.* (citing *Lozovyy*, 813 F.3d at 585).  After determining that the parties in the cases before it had not properly raised any other purported conflicts between article 971 and federal law other than the implications of this "probability of success" standard, the Fifth Circuit has then on multiple occasions assumed without deciding that

---

[2]     The Defendants cite *Henry v. Lake Charles Am. Press,* 566 F.3d 164, 170 (5th Cir. 2009), to contend that the Fifth Circuit has held that article 971 applies in federal court.  The Fifth Circuit, however, disagrees that *Henry* established such precedent:

> We have noted on several occasions that [the applicability of Article 971 in federal court] is an open question. . . .  These opinions post-date our decision in *Henry* [], which stated without explanation that 'Louisiana law, including the nominally-procedural Article 971, governs this diversity case.'  In *Lozovyy*, we noted the possibility that, particularly in light of our subsequent decisions, *Henry* could be interpreted as assuming the applicability of Article 971 for purposes of that case without deciding its applicability in federal courts more generally.

867 F.3d at 589, n.2 (5th Cir. 2017) (internal citations omitted); *see also Klocke v. Watson*, 936 F.3d 240, 248 (5th Cir. 2019) (observing that "the court [in *Henry*] did not discuss the potential conflict between the state law and federal rules, and *Henry* preceded the [Supreme Court's] decision in *Shady Grove* [*Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010)]," governing when *Erie* bars the application in federal court of a state law that conflicts with a Federal Rule of Civil Procedure).  Based on the Fifth Circuit's interpretation of its own holdings, this Court must conclude that whether article 971 presents an *Erie* conflict is "an open question."

article 971 does not conflict with the summary judgment standard outlined in Rule 56 of the Federal Rules of Civil Procedure, and, therefore, can apply in federal court.  *See Block II*, 867 F.3d at 589; *Block I*, 815 F.3d at 221; *Lozovyy*, 813 F.3d at 582.[3]

Here, similarly, the Debtors do not assert any conflict between article 971 and Rule 56 other than claiming that the "probability of success" language imposes a more onerous burden on a non-movant than summary judgment—the argument that the Fifth Circuit has already rejected. Therefore, consistent with the Fifth Circuit's guidance, this Court declines to find a conflict with Rule 56 that would prohibit the application of article 971.  As the Fifth Circuit has done under such circumstances, we instead assume without deciding that article 971 does apply and, therefore, necessarily does not impose requirements that would conflict with those laid out in Rule 56.

### B.     Federal Rule of Civil Procedure 56 Standards

Assuming without deciding that article 971 applies, "a non-movant's burden in opposing an Article 971 motion to strike is the same as that of a non-movant opposing summary judgment under Rule 56."  *Block I*, 815 F.3d at 221.  Under Rule 56, as made applicable to these proceedings by Federal Rule of Bankruptcy Procedure 7056, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* FED. R. BANKR. P. 7056.  A genuine dispute of material fact is one that could affect the outcome of the action or allow a reasonable fact finder to find in favor of the non-moving

---

[3]      The Fifth Circuit stated in *Block I* that it was not in a position to rule, for instance, on whether "Article 971's burden-shifting dynamic, discovery prevention, and mandatory attorney's fees cause Article 971 to conflict with Rule 56."  815 F.3d at 221, n.3.

party.  *See Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 321–22 (internal punctuation omitted).  Accordingly, "when the nonmovant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial."  *Klocke v. Univ. of Tex. at Arlington*, 938 F.3d 204, 209 (5th Cir. 2019) (quoting *McClendon v. United States*, 892 F.3d 775, 781 (5th Cir. 2018)) (internal citations and quotation marks omitted).

A plaintiff alleging defamation under Louisiana law must prove five elements: "(1) defamatory words; (2) publication to a person other than the one defamed; (3) falsity; (4) malice; and (5) resulting injury."[4] *Hoffman v. Bailey*, 257 F. Supp. 3d 801, 819–20 (E.D. La. 2017); *see also* LA. CIV. CODE ANN. art. 2315.  Although the latter four elements are all questions of fact, the first element—whether certain statements are defamatory—is subject to a threshold legal inquiry under Louisiana law.  *See Costello v. Hardy*, 864 So. 2d 129, 140 (La. 2004).  "[T]he legal issue to be decided by the Court is whether a particular statement is '*objectively* capable of having a

---

[4]      The burden is typically on the plaintiff to prove each of these elements.  But "[w]hen the plaintiff proves publication of words which are *defamatory per se*, the elements of falsity and malice are presumed, but may be rebutted by the defendant. . . . [and] [t]he element of injury may also be presumed or inferred." *Kosmitis*, 685 So. 2d at 1180 (citations omitted) (emphasis added).  "Words which expressly or implicitly accuse another of criminal conduct, or which by their very nature tend to injure one's personal or professional reputation, are considered defamatory on their face, or defamatory per se." *Id.*  Because this Court determines that summary judgment for the Defendants is improper at this stage even if the Debtors retain the burden of proof on all elements, at this time, the Court does not reach the question of whether any of the Defendants' statements rise to the level of "defamatory per se" so as to shift the burden at trial as to falsity, fault, and damages.

defamatory meaning . . . considering the statement as a whole, the context in which it was made, and the effect it is reasonably intended to produce in the mind of the average listener.'" *Kosmitis v. Bailey*, 685 So. 2d 1177, 1180 (La. Ct. App. 1996) (citing *Sassone v. Elder*, 626 So. 2d 345, 352 (La. 1993)). "If that issue is resolved in the plaintiff's favor, the actual recipient's subjective understanding or perception of the communication as defamatory becomes a factual issue for the jury." *Id.* (citing *Sassone*, 626 So. 2d at 352). "If, however, the court determines that the words at issue are not objectively capable of having a defamatory meaning, the plaintiff's claim is not actionable and may be dismissed by summary judgment, regardless of the arguable presence or evidentiary strength of the remaining elements of the claim." *Id.* (citing *Sassone*, 626 So.2d at 352).

### 1. *The Defendants' statements are capable of having defamatory meaning*

On review of this threshold legal question, this Court finds that the statements at issue are indeed "objectively capable of having a defamatory meaning." *Id.* The Debtors allege, and the Defendants do not dispute, that the Defendants represented to AmeriFactors and GVL's other business contacts that GVL was in default on payment to KZM and, further, was not paying its debts to other contractors. The Defendants also do not contest that, among other statements, Henry wrote and published online the following review of GVL:

> The owner is a thief and a lair [*sic*]. Doesn't pay their vendors, subs, bills, and being sued by many. A disgrace to the maritime industry. Do not do business with this company unless you want to lose money. They deserve a minus ten stars, instead of a one star. All comments were probably paid to give five star reviews.

GVL Compl., ¶ 144. "Defamatory words are, by definition, words which tend to harm the reputation of another so as to lower the person in the estimation of the community, to deter others from associating or dealing with the person, or otherwise expose a person to contempt or ridicule." *Wood v. Del Giorno*, 974 So. 2d 95, 99 (La. Ct. App. 2007) (citations omitted). Consistent with

that definition, Louisiana courts have found that accusations that a professional performs below acceptable standards of competence or trustworthiness in their field are objectively capable of carrying defamatory meaning. *See Costello*, 864 So. 2d at 141 (holding that the "plain vanilla" statement in legal complaint that an attorney's representation "fell below the standard of care of competent practitioners" was capable of defamatory meaning because it "call[ed] into question [the attorney's] skill as an attorney and whether he comported with the appropriate standard of care. . . [and] [a]llegations of this kind would tend to diminish Hardy's reputation with respect to his profession."); *see also Broussard v. Jazz Casino Co. LLC*, 193 F. Supp. 3d 661, 665 (E.D. La. 2016) (finding that a defendant employer's statement in the plaintiff's personnel file that she was terminated for "misconduct" was capable of defamatory meaning because "the word 'misconduct' in the 'parlance of employment law . . . often refers to theft, dishonesty, or insubordination'").

The context and circumstances of such a statement affect whether it can be perceived as defamatory: "The test is the effect it is fairly calculated to produce and the impression it would naturally engender in the minds of the average persons by whom it is heard." *Wainwright v. Tyler*, 253 So. 3d 203, 218 (La. Ct. App. 2018); *see also Mahfouz v. Davenport*, 149 So. 3d 845, 854 (La. Ct. App. 2004) ("[C]asual remarks made in informal conversation are not defamatory, even if they are unflattering."). For instance, although insults and personal verbal attacks may not be defamatory, they can be if they are presented in a context where they could be reasonably perceived by the listener or reader as reliable representations of the subject's character or abilities. *Compare Wood*, 974 So. 2d at 97, 99 (La. Ct. App. 2007) (holding that a radio show guest's declarations during a heated debate that his opponent was "a complete fraud," "out-and-out lying," and "an idiot" not capable of defamatory meaning because "any reasonable person listening to the show would not believe that [the defendant] was actually accusing [the plaintiff] of engaging in

10

fraudulent behavior or dishonest business practices"), *with Kosmitis*, 685 So. 2d at 1185 (holding that attorney could be sued for making defamatory statements when he allegedly "hit the desk" and told clients interested in hiring his former coworker:  "[She was] not a real lawyer.  She does not know how to handle a case.  She was my gopher.  She was fired for misconduct, for inappropriate behavior, and for failing to do any work.  She is an incompetent lawyer.  She did not do any work on your file.").  Further, although "a statement of opinion based totally on the speaker's subjective view, *without expressly stating or implying the existence of underlying facts*, is a purely subjective statement" that cannot be defamatory, the relevant inquiry is whether an ordinary person hearing the supposedly subjective comment, in the context in which it was published, "would be likely to understand it . . . as a statement of existing fact."  *Wainwright*, 253 So. 3d at 219–20 (emphasis added).

The Defendants here claim that Henry's statements about GVL and Hyde were "principally opinion or hyperbole."  [ECF Doc. 21, at 2].  But Henry did not make the offending proclamations in a context when one would necessarily expect dramatic and unreliable hyperbole.  Rather, taking the facts in the light most favorable to the Debtors as the non-moving parties, Henry purposely contacted GVL's business contacts in his professional capacity to declare that GVL was not paying its debts.  In the case of the online review, he made those representations through a forum that customers typically consult when making business decisions.  A reasonable listener and reader could believe under such circumstances that Henry's statements were informed representation of the Debtors' professional status.  And although Henry's statements certainly include elements of his subjective opinion, he also represented that he formed such opinions based on underlying facts: "[GVL] [d]oesn't pay their vendors, subs, bills, and [is] being sued by many."

11

This Court accordingly finds, at a minimum, that Henry's direct representations to GVL's business contacts that GVL was not paying its debts and his online review containing similar assertions are capable as a matter of law of defamatory meaning as "tend[ing] to harm [the Debtors'] reputation so as to lower [them] in the estimation of the community or to deter third persons from associating or dealing with [them]." *See Shelton v. Pavon*, 236 So. 3d 1233, 1237 (La. 2017) ("If the plaintiff can demonstrate a probability of success on any of his claims, then the special motion to strike must fail."). Thus, Debtors' defamation claims do not fail as a matter of law under this prong.

Having satisfied this threshold legal inquiry, the Court next considers whether the Debtors have provided summary judgment evidence to establish genuine disputes as to the other four elements of their defamation claims and, if not, whether the failure to do so at this stage justifies judgment in favor of the Defendants.

2.  *The Debtors have demonstrated genuine disputes of material fact regarding the remaining elements of their claims for defamation against the Defendants*

The Court easily concludes that the Debtors have demonstrated a genuine dispute as to publication through the verified complaints filed in the adversary proceedings and signed by Hyde[5] and the additional evidence attached to the Oppositions to the Motions to Strike. *E.g.*, GVL Compl., ¶¶ 96–98 ("Henry has contacted multiple GVL customers and vendors and made false, misleading, and negative statements to them about GVL . . . and Hyde."); *see also Costello v. Hardy*, 864 So. 2d 129, 142 (La. 2004) ("[A]ny communication to a third party, absent a privilege, absolute or qualified, is considered a publication."). Hyde's statements in her affidavits and complaint similarly create a genuine dispute as to injury, both to GVL and herself individually.

---

[5]    "On summary judgment, factual allegations set forth in a verified complaint may be treated the same as when they are contained in an affidavit." *Hart v. Hairston*, 343 F.3d 762, 765 (5th Cir. 2003).

*E.g.*, GVL Compl., ¶¶ 90, 102, 105, 110; Hyde Compl., ¶¶ 45, 51, 63, 70–71.; *see also Kosmitis*, 685 So. 2d at 1187 (holding that, because the required injury "may consist entirely of mental anxiety and suffering subjectively experienced" and a plaintiff "certainly has personal knowledge of the subjective damages she claims to have suffered as a result of [the defamatory] statements," her sworn statements of those emotional damages alone "satisf[y] the [required] showing of evidentiary strength" to survive summary judgment as to this element).

The Defendants also declare in their Motions To Strike that the Debtors cannot establish a genuine dispute as to falsity and, by implication, fault.  In addition to their arguments that Henry's statements were mere opinion, the Defendants also contend that any statements of fact were, indeed, true.  Defendants' alleged statements to AmeriFactors and other vendors that the Debtors had defaulted on their payments to KZM are capable of defamatory meaning if a factfinder concludes such statements are false.  The Debtors have provided summary evidence through sworn declarations and their verified Complaints that the allegedly unpaid amounts were not in fact owed to the Defendants, and have identified specific lines of inquiry that could reveal further evidence in support.  *See, e.g.*, GVL Compl. ¶¶ 29–34, 39, 84–90.  Defendants acknowledge this with an ambiguous response:

> GVL argues at length in its complaint that it was justified in not paying Mr. Henry (and therefore the crews and contractors and vendors).  But this Court need not look at the dispute between GVL and Mr. Henry to see whether GVL was justified in nonpayment of Mr. Henry because GVL short-paid or left unpaid all the creditors in this suit.

[ECF Doc. 21, at 3].  That argument seems susceptible to two possible readings, neither of which demonstrate an "absence of genuine dispute of material fact" as to whether Debtors were indeed in default to KZM.  First, the Defendants arguably assert that it does not matter whether Debtors were indeed in default to KZM, because Henry's statements that Debtors failed to pay *others* were

13

true.  That argument, however, would be unresponsive to the Debtors' claim they suffered harm because Henry told AmeriFactors and GVL's customers that the Debtors *were in default to KZM* specifically.  *See* GVL Compl., ¶¶ 21–23, 25, 26–28 & 95.  Alternatively, the Defendants could be contending here that the fact that GVL was allegedly in default to multiple others makes the Debtors' representations that they were not in default to KZM not credible.  But it is well established that "[i]t is not the function of the trial judge, in ruling on a motion for summary judgment, to weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence."  *Honore v. Douglas*, 833 F.2d 565, 567 (5th Cir. 1987).  Alleged non-payment of other creditors is nothing more than competing evidence on the clearly disputed question of whether GVL had failed to pay KZM amounts lawfully due at the time of Henry's declarations.  Indeed, the Defendants' counsel himself at oral argument on the Motions To Strike acknowledged that critical questions of fact are at issue as to this factor:  "[I]t's all well and good for them to say that Mr. Henry submitted fraudulent invoices . . . it's very different for them to prove that, and that's going to take a trial on the merits."  Hr'g Tr. Min. 44:40–44:49.

Defendants also use the assertion in the Motions To Strike that "GVL short-paid or left unpaid all the creditors in this suit" to defend the alleged veracity of statements like those in his online review that the Debtors do not pay their vendors:

> Mr. Henry claimed that GVL has not paid its vendors or subcontractors.  A brief review of the creditors' lists and claims reveals this to have been entirely accurate.  GVL did not accumulate nearly eight figures in debt against nearly zero dollars in assets by paying all its vendors.

[ECF Doc. 21, at 8–9].  The Defendants then cite to other creditors' proofs of claim filed in the underlying bankruptcy cases as evidence that GVL "accumulate[d] nearly eight figures in debt." *Id*.  There are a couple of problems with that approach.  First, although potentially relevant, the Debtors' alleged lack of solvency at the time of filing is not necessarily the proper inquiry.  The

Defendants' statements to vendors, AmeriFactors, and through online reviews that the Debtors were not paying their debts were made before the bankruptcy was filed, and the Debtors specifically contend that Henry's statements to that effect caused its dire financial situation, not the other way around.  *See* GVL Compl., ¶¶ 95–105.  Additionally, citing to *disputed* proofs of claim filed in the Debtors' bankruptcy cases, as the Defendants have done here, hardly demonstrates that there is no dispute as to whether and how much the Debtors indeed owe to others.

### 3.    *Alternatively, the Court denies the Motions To Strike pursuant to Rule 56(d)*

Finally, even if Debtors need further evidence to establish a genuine dispute as to whether they were indeed failing to pay their debts when the Defendants made unflattering statements about GVL and Hyde both publicly and privately, the Court concludes that it would be premature to find that Debtors not producing sufficient evidence at this stage to meet that burden justifies judgment in the Defendants' favor.  Likewise, as to the element of "fault," the Court finds that the Debtors must be afforded adequate opportunity to discover materials tending to prove whether the Defendants acted with the requisite malice in making the potentially defamatory statements.[6]

Federal procedural law provides the Debtors the opportunity to develop their factual allegations by taking depositions of those involved and conducting other discovery before a summary disposition.  *See* 10B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE  § 2730 ("Since the information relating to state of mind generally is within the exclusive knowledge of one of the litigants and can be evaluated only on the basis of circumstantial evidence, the other parties normally should have an opportunity to engage in discovery before a summary judgment is rendered.").  Federal Rule of Civil Procedure 56(d)—

---

[6]       "Malice (or fault), for purposes of the tort of defamation, is a lack of reasonable belief in the truth of the statement giving rise to the defamation."  *Costello v. Hardy*, 864 So. 2d 129, 143 (La. 2004).

with which article 971 cannot conflict if it is to be applied in federal court[7]—governs premature

summary judgment motions:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
>> (1) defer considering the motion or deny it;
>>
>> (2) allow time to obtain affidavits or declarations or to take discovery; or
>>
>> (3) issue any other appropriate order.

FED. R. CIV. P. 56(d).[8]   "One of the most common reasons offered under Rule 56(d) for being

unable to present specific facts in opposition to a summary-judgment motion is insufficient time

or opportunity to engage in discovery."   10B CHARLES ALAN WRIGHT & ARTHUR R. MILLER,

FEDERAL PRACTICE & PROCEDURE § 2741 (3d ed. 2021) (collecting cases).   Notably, in the seminal

*Celotex* case on summary judgment, the United States Supreme Court declared that "Rule 56[]

mandates the entry of summary judgment, *after adequate time for discovery* and upon motion,

against a party who fails to make a showing sufficient to establish the existence of an element

essential to that party's case, and on which that party will bear the burden of proof at trial." 477

U.S. 317, 322 (1986) (emphasis added).   As further summarized by one scholar:

---

[7]    As in *Block*, no party here has briefed or otherwise asserted that article 971's discovery limitations conflict with those in Rule 56.  Following the Fifth Circuit, we therefore assume without deciding that the summary judgment standards apply to the Motions To Strike.

[8]    The Debtors indirectly objected to the Motions To Strike as premature, asserting that they have satisfied the initial pleading standard and are entitled next to discovery before the Court can resolve the issues:  "All GVL's and Mrs. Hyde's allegations—of defamation and otherwise—set forth claims upon which relief should be granted.  All those claims should proceed to discovery and trial." [ECF Doc. 32, at 2].  The Debtors did not explicitly state their need for discovery through an "affidavit or declaration" as the text of Rule 56(d) provides; however, strict adherence to that formalistic procedure is not required in this Circuit.  "In order to trigger the rule non-movants need only submit an 'equivalent statement preferably in writing' that conveys the need for additional discovery." *Wichita Falls Off. Assocs. v. Banc One Corp.,* 978 F.2d 915, 919 (5th Cir. 1992) (citing *Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1194 (5th Cir. 1986)); *see also Littlejohn v. Shell Oil Co.,* 483 F.2d 1140, 1146 (5th Cir. 1973) (en banc) ("It is true that this representation was not in affidavit form by plaintiff in person but we think that the written representation by his lawyer, an officer of the court, is in the spirit of Rule 56(f) under the circumstances.  Form is not to be exalted over fair procedures.").

An opportunity to engage in meaningful discovery is the fulcrum of a notice pleading system, and the resolution of a summary judgment motion before the nonmovant has had that opportunity would undermine the system of which Rule 56 is only one part. That is because it would be patently unfair to permit a judgment to be entered against a person without affording that party the opportunity to gather and submit evidence on his or her behalf. The legal system would not permit this at trial and it should not permit it at the summary judgment stage which is a substitute for trial. For this reason, Rule 56(c) refers specifically to the fruits of discovery as an appropriate element of proof in the summary judgment process. Operation of that process therefore must ensure that parties have sufficient time to gather materials to support and oppose the motion. Because the movant has the tactical advantage of choosing when to file a summary judgment motion, Rule 56(f) is designed entirely to protect the non-movant from having to respond to a summary judgment motion before he or she is able to obtain evidence to oppose the motion.

Edward Brunet, *The Timing of Summary Judgment*, 198 F.R.D. 679, 687 (2001).[9]

For those reasons, "'[c]ontinuance of a motion for summary judgment for purposes of discovery should be granted almost as a matter of course' unless "the non-moving party has not diligently pursued discovery of the evidence.'" *Wichita Falls Off. Assocs. v. Banc One Corp.*, 978 F.2d 915, 919 n.4 (5th Cir. 1992) (quoting *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1267 (5th Cir.1991)). Although "the non-moving party may not rely merely on vague assertions that discovery will produce some unrelated, unspecified facts . . . when a party is seeking discovery that is germane to the pending summary judgment motion it is inequitable to pull out the rug from under them by denying such discovery." *Id.* at 920. Here, no party has conducted discovery. Although "the trial court need not aid non-movants who have occasioned their own predicament through sloth," that is patently not the case here. *Wichita Falls Off. Assocs. v. Banc One Corp.*, 978 F.2d 915, 919 (5th Cir. 1992).

---

[9]      "Prior to 2010, when Rule 56 was totally rewritten, the provisions currently found in Rule 56(d) appeared in Rule 56(f)." 10B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 2741 (3d ed. 2021). "No substantive change was made so pre-2010 cases applying Rule 56(f) remain controlling authority under the current Rule 56(d)." *Id.*

**CONCLUSION**

For the foregoing reasons, the Motions To Strike are DENIED.

New Orleans, Louisiana, this 20th day of August 2021.

_____              _____
MEREDITH S. GRABILL
UNITED STATES BANKRUPTCY JUDGE